UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

Case No. 03-CV-74300
Honorable Nancy G. Edmunds

v.

IFTAKHAR U. KHAN, AMJAD M. KHAN,
MAIMUNAH M. KHAN (a/k/a "MUNAH KHAN"
AND "MONA KHAN"), AND SHAGUFTA
KHAN (a/k/a "SHAGUFTA LONE"),

       Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff United States brought this civil action against Defendant Maimunah Khan ("Mona Khan") to recover fines and penalties stemming from her participation, along with her husband Iftakhar Khan, Amjad Khan and his wife Shagufta Khan, in a scheme to defraud the government by improperly filing for and receiving Medicare reimbursements. The Government now files its Motion in Support of Partial Summary Judgment Against Defendant Maimunah Khan ("Mot.") against Mona Khan on Counts 1-3 of the United States' Amended Complaint. Alternatively, the government moves for partial summary judgment on Counts 4-5 of the United States' Amended Complaint. For the reasons set forth below, the Government's motion for partial summary judgment on Counts 1-3 of the Amended Complaint is GRANTED. Alternatively, should it subsequently be determined that the relief granted under the False Claims Act is not

supported by law, the Government's motion for partial summary judgment on Counts 4-5 of the Complaint is GRANTED.

## I.    PROCEDURAL BACKGROUND

In 2003, Iftakhar U. Khan ("Iftakhar") and Amjad M. Khan ("Amjad") were indicted on various charges related to an alleged scheme to defraud the government by improperly filing for and receiving Medicare reimbursements on behalf of Michigan Rehabilitation and Pain Management, Inc. ("MRPM"). On October 24, 2003, the Government commenced this civil action against Iftakhar, Amjad and their respective spouses, Mona and Shagufta, for violations of the federal False Claims Act and for common law unjust enrichment and payment by mistake. On August 3, 2006 Amjad pled guilty to one count of health care fraud and on January 4, 2007 Iftakhar pled guilty to one count of health care fraud.

On July 16, 2008 this Court issued an opinion and order granting the government's motion for partial summary judgment in this civil action against Amjad for violations of the Federal False Claims Act and awarding the government treble damages as well as statutory penalties in the total amount of $3,223,097. (Docket No. 131.) On January 8, 2009 this Court entered its Final Judgment as to Amjad in the amount of $3,223,097 and dismissing with prejudice the government's unresolved claims against Amjad in this civil action against Amjad. (Docket No. 137.) On July 22, 2008 this Court issued an opinion and order granting the government's motion for partial summary judgment in this civil action against Iftakhar for violations for the Federal False Claims Act and awarding the government treble damages and statutory penalties in the amount of $2,418,386. (Docket No. 132.) On January 8, 2009 this Court entered its

Final Judgment as to Iftakhar in the amount of $2,418,386 and dismissing with prejudice the government's unresolved claims against Iftakhar in this civil action. (Docket No. 138.) On or about January, 2009 the government reached a settlement with Shagufta (Amjad's wife) resolving all of the government's claims against her in this civil action. The motion before this Court relates to the remaining defendant in this civil action, Mona Khan, the wife of Iftakhar.

II.   **FACTS**

The government's allegations against Defendant Mona Khan involve her participation in MRPM's filing of false cost reports for the fiscal years 1995-1998 (the "Cost Reports"). Iftakhar was the president of MRPM and pled guilty to one count of healthcare fraud for his involvement in the filing of the MRPM 1998 Cost Report. (Plea Agreement, Mot. Ex. 1.) MRPM filed Cost Reports for Medicare reimbursement for services it provided during the years 1995-1998. (Mot. Exs. 2, 3, 4, 5.) Each Cost Report includes an Exhibit 6 titled "PROVIDERS OWNER'S/MANAGEMENT PERSONNEL COMPENSATION EXHIBIT." (Mot. Exs. 7, 8, 9, 10.) Each Exhibit 6 to the MRPM Cost Reports lists Mona Khan as the Executive Director and manager of MRPM. The forms list the number of annual hours worked by Mona Khan as 2340 and lists as one of her duties "overall supervision of fiscal and community relations." (*Id.*) The Cost Reports also indicate that Mona Khan is "responsible for day to day operational management of the Agency." (*Id.*) Each Cost Report lists Mona Khan's salary and benefits for the year. Her total compensation, including salary and benefits, for the years 1995-1998 was $342, 341. (Mot. Ex. 11.) IRS W-2s, reflecting each of these amounts, were filed with the Cost Reports. (Mot. at 2.)

3

Each Exhibit 6 to the MRPM Cost Reports contains a certification that is signed by "M. Khan" and states as follows:

> This is to certify that I acknowledge the information contained herein and appended, which will be used to determine reasonable allowance for compensation, is correct to the best of my knowledge and belief. Further I understand (1) this disclosure will be used in arriving at monies due to or from this provider of covered services to Medicare beneficiaries and (2) that anyone who misrepresents or falsifies this essential information may upon conviction be subject to fine and/or imprisonment under Federal Law.

Exhibit 6 to the 1997 Cost Report was submitted as a sample for handwriting analysis to the United States Postal Inspection Service Forensic Laboratory for Handwriting Examination and was positively identified as that of Mona Khan. (Mot. Ex. 12.)[1]

At his Rule 11 plea agreement hearing, Iftakhar Khan admitted that his wife Mona was never the Executive Director of MRPM:

> MR. THOLEN: And as far as – I have a few questions to ask regarding your wife and her employment. Your wife's name is Mona Khan; is that correct?
>
> IFTAKHAR KHAN: Yes, yes.
>
> MR. THOLEN: And Mona Khan at no time performed any executive duties at Michigan [MRPM]; correct?
>
> IFTAKHAR KHAN: She didn't. She just attended board meetings. I will say that is true.

---

[1] It is beyond dispute that Mona signed at least two of the Exhibit 6 Cost Reports. In her brief she admits that she signed either the 1995 or 1996 Cost Report, although she was not sure which of the two she signed. (Docket No. 167 at 30.) Also, the 1997 Cost Report was submitted for handwriting verification and was positively identified as bearing her signature. The government contends that each Exhibit 6 to the Cost Reports contain this same signature and bases its damage calculation on all four Cost Reports.

4

Plea Hearing Transcript (Mot. Ex. 13 at 29-30.) In addition, Iftakhar Khan's Rule 11 Plea Agreement states that:

> [W]hen he [Iftakhar Khan] signed and caused the cost report to be submitted, defendant [Iftakhar Khan] knew that the cost report contained false expense entries, including: (1) salaries and pension costs for defendant's [Iftakhar Khan's] spouse.

(Mot. Ex. 1 at 2.)

Iftakhar Khan expressly admitted at his plea hearing that the amounts listed for his wife's compensation were false:

> COURT: And you know that in hiding these marketing expenses and physical therapy expenses you were doing something wrong within the Medicare – the structure of the Medicare program with the intent to get reimbursement for costs which were not allowed.
>
> IFTAKHAR KHAN: Yes, your Honor.
>
> COURT: And that similarly in listing your wife's salary and expenses as a reimbursable expense you were characterizing her work as something other than what it was.
>
> IFTAKHAR KHAN: I am aware of that now, your Honor.
>
> COURT: No, I know you're aware of that now –
>
> IFTAKHAR KHAN: Yes.
>
> COURT: You need to acknowledge, to admit to me that is if you want to plead guilty in this case, that you knew it then.
>
> IFTAKHAR KHAN: I knew it then, your Honor.

Plea Hearing Transcript (Mot. Ex. 13 at 32.) Iftakhar Khan admits that he submitted these falsified Cost Reports to Medicare for reimbursement and that Medicare paid MRPM pursuant to these Cost Reports. (Mot. Exs. 1 at 2; 13 at 28.)

5

In addition to falsely certifying the Cost Reports submitted to Medicare by affixing her signature to the Exhibit 6 certification, Mona Khan also cashed numerous "paychecks" from MRPM during the years 1997, 1998 and 1999.  MRPM issued checks during these years payable to Mona Khan totaling $159,188, each of which was endorsed by "M. Khan."  (Mot. Ex. 15.)  The endorsement on the back of one of these checks was submitted to the United States Postal Inspection Service Forensic Laboratory for Handwriting Examination and was positively identified as that of Mona Khan.  (Mot. Ex. 12.)

### III.    Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be

6

viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific fats showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

**IV. Analysis**

**A. Mona Khan's Liability Under the False Claims Act**

The False Claims Act ("FCA") imposes liability on any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

31 U.S.C. § 3729(a).

The government alleges in Count I of its Complaint that the defendants, including Mona Khan, violated § 3729(a)(1) by presenting or causing false claims, consisting of the MRPM Medicare Cost Reports, to be filed for the fiscal years 1995-1998.[2] The elements required to establish liability under this section are: (a) a false claim; (2) which

---

[2] Iftakhar Khan pled guilty to only one count of Medicare fraud involving only the claim filed for the fiscal year 1998. In opposition to the government's earlier-filed motion for partial summary judgment, Iftakhar Khan argued to this Court that his liability in this civil action should be limited to the 1998 fiscal year. This Court, in its Order dated July 16, 2008, expressly rejected this argument and held that Iftakhar Khan was collaterally estopped from denying liability under the FCA, for purposes of this civil action, for fiscal years 1996-1998.

7

was presented, or caused to be presented, by the defendant to the United States for payment or approval; (c) with knowledge that the claim was false. *See U.S. v. St. Luke's Subacute Hospital and Nursing Centre, Inc.*, 2004 WL 2905237 (N.D. Cal., Dec. 16, 2004).

### 1. There was a false claim.

For purposes of the FCA, each false Cost Report would constitute a separate "false claim." *See United States ex re. Augustine v. Century Health Servs.*, 289 F.3d 409, 416 (6th Cir. 2002). Each Cost Report filed for the years 1996-1997 contained the representation that Mona Khan was the executive director of MRPM, which Iftakhar Khan admitted was false. There is no question that each Cost Report constituted a false claim.[3]

### 2. The claim was presented, or caused to be presented, by the Defendant to the United States for payment or approval.

By signing and certifying Exhibit 6 to the 1995-1998 Medicare Cost Reports, Mona Khan caused false claims to be filed with the government. There is no question that MRPM submitted these Cost Reports to Medicare for reimbursement and that Medicare paid these claims. (Mot. Exs. 1 at 2; 13 at 28.) The FCA imposes liability on those who present false claims as well as those who cause false claims to be presented. The statute does not require that the defendant herself actually prepare,

---

[3] The government contends that Exhibit 6 is a part of the Medicare Cost Report and thereby is a claim in its own right. (Mot. at 11 note 1.) It argues, additionally, that Exhibit 6 is at the very least a false record or statement made for the purpose of getting a false claim paid and therefore also violates 31 U.S.C. § 3729(a)(2). While the government need only prove one or the other to establish the first prong of liability under the FCA, this Court finds that Exhibit 6 can fairly be characterized as both a claim in its own right and a false statement made for purposes of getting a false claim paid and therefore the government has established liability under both §§ 3729(a)(1) and (2).

sign and file the false claim or statement. The FCA reaches any person who knowingly assisted in causing the government to pay a false claim. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-545 (1943). Thus, the government need not demonstrate that Mona Khan actually submitted the claim forms to be liable. *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997). By affixing her signature to Exhibit 6 to the Cost Report, which clearly indicated that she was an executive director of MRPM, a claim defendants have conceded is false, Mona Khan assisted in causing the government to pay a fraudulent claim.

### 3. Defendant knew that the claim was false.

The FCA, in § 3729(b), defines "knowing" or "knowingly" as follows: "For purposes of this section, the terms "knowing" or "knowingly" mean that a person, with respect to information, (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. Mona Khan knew when she signed Exhibit 6 to the Cost Reports that she was not performing the duties of the executive director as described in the claim report. In fact, she had to know that she was not performing any services for MRPM and yet she expressly represented in her Exhibit 6 certification that she did. Significantly, the signature line on the Exhibit 6 forms that Mona Khan signed appears immediately below, not pages away from, the express certification acknowledging that she was making disclosures about compensation for services she had rendered. She knew that she provided no such services, therefore she had direct knowledge that the Cost Report was false. Moreover, she endorsed checks payable to her from MRPM in the amount of

$159,188 when she knew she had not performed any services as an employee of MRPM. By signing the certification on a document which contained false information about her employment services for MRPM and by endorsing payroll checks from MRPM for significant amounts of money, Mona Khan acted with at least reckless disregard, if not actual knowledge, of the falsity of the MRPM Cost Reports.

### B.  The Amount of Damages Attributable to Mona Khan

The government adopts the restitution amount of $733,975 as the measure of single damages attributable to the fraud committed by Iftakhar Khan in this case. (Mot. at 12.) This restitution amount is based upon all four Cost Reports and the amount attributable to the false characterization of Mona Khan's compensation totaled $342,341. The fraud attributable to Mona Khan's conduct, when compared to the total restitution amount of $733,975 amounts to 38.9% of the total false claim amount. (Mot. Ex. 21.) Thus the amount of damages attributable to Mona Khan is $285,516, or 38.9% of $733,975.

### C.  Fines and Penalties Under the FCA

The FCA provides that individuals who violate its provisions are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729. Defendant Mona Khan is liable for three times the amount of the fraud loss attributable to her conduct for a total of $856,548. Furthermore, Mona Khan shall be liable for a penalty of $5,000 for each of the four false claims that she caused to be filed.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiff's motion for partial summary judgment on Counts 1-3 of the Complaint is GRANTED.[4]


                          s/Nancy G. Edmunds
                          Nancy G. Edmunds
                          United States District Judge

Dated:  August 5, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 5, 2009, by electronic and/or ordinary mail.

                          s/Carol A. Hemeyer
                          Case Manager

---

[4] In the alternative, should the amounts awarded to the government under the FCA for the fraud loss attributable to Mona Khan subsequently be found to be legally unsustainable, this Court grants the government's motion for partial summary judgment on Counts IV and V of its Complaint for unjust enrichment and payment by mistake, and awards damages of $159,188, the amount represented by the checks which Mona Khan indisputably endorsed and deposited.  *See Hill v. Waxberg*, 237 F.2d 936, 939 (9th Cir. 1956) (where defendants received Medicare reimbursements to which they were not entitled, their liability for unjust enrichment is clear); *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970) (the government may recover funds from any third party into whose hands mistaken payments flowed where they benefitted from the tainted transaction); *United States v. Lahey Hosp. Clinic, Inc.*, 399 F.3d 1, 15 (1st Cir. 2005) (funds wrongly paid out under the Medicare program recoverable under federal common law doctrines of payment by mistake and unjust enrichment).

11